NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LISA RYMAS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 15-8188 (BRM)(LHG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PRINCETON HEALTHCARE SYSTEM | : | |
| HOLDING, INC. | : | |
| | : | |
| Defendant. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Princeton Healthcare System's ("Defendant" or the "Hospital") Motion for Summary Judgment. (ECF No. 19.) Plaintiff Lisa Rymas ("Plaintiff") opposes the motion. (ECF No. 29.) Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff was a Marketing and Design Manager, employed by Defendant. (Am. Compl. (ECF No. 4) ¶ 20.) Plaintiff claims she was wrongfully terminated due to her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-4, *et seq.* ("NJFLA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). (*Id.* at Intro & ¶¶ 34-38.)

### A. Plaintiff's Employment

On February 16, 2004, Defendant hired Plaintiff to a full-time position as a Program

1

Assistant in the Community Education and Outreach Department. (Def.'s Statement of Undisputed Facts (ECF No. 19-3) ¶ 1; Pl.'s Statement of Undisputed Facts (ECF No. 29-6) ¶ 1.) In April 2008, Plaintiff was promoted to the position of Marketing and Design Manager. (ECF No. 19-3 ¶ 3; ECF No. 29-6 ¶ 10.)

The Parties dispute the scope of Plaintiff's job responsibilities in her Marketing and Design Manager role. (ECF No. 19-3 ¶¶ 4-6; Pl.'s Response to Def.'s Statement of Undisputed Facts (ECF No. 29-5) ¶¶ 4-5.) Defendant claims Plaintiff's responsibilities were limited to the management of marketing projects, market data and data systems, business intelligence, and the generation of Return on Investment ("ROI") Reports with the assistance of a Customer Relations Management ("CRM") system. (ECF No. 19-3 ¶¶ 4-6.) Plaintiff claims her role also included other responsibilities, including community project/system management, web design, and "General Activities" associated with management. (ECF No. 29-5 ¶ 4.) Plaintiff remained in this role until her termination in January 2014. (ECF No. 19-3 ¶ 3; ECF No. 29-6 ¶ 12.)

### B. The Marketing Department

While Plaintiff served as Marketing and Design Manager, she reported directly to Amy Franco Rodriguez ("Franco"), Director of Marketing and Public Affairs, who in turn reported to Carol Norris-Smith ("Norris-Smith"), Vice President of Marketing and Public Affairs. (ECF No. 19-3 ¶¶ 8-9; ECF No. 29-6 ¶ 7.) In the year before Plaintiff was terminated, the Marketing Department included six employees: Franco, who was the department's Director; Plaintiff and Beth Kerber ("Kerber"), were Managers; and Terri Platt ("Platt"), Rachel Harvey ("Harvey"), and Andrew Williams ("Williams"), held the rank of Coordinator. (ECF No. 19-3 ¶ 10; ECF No. 29-5 ¶ 10.) Managers supervised the work of Coordinators, and Plaintiff supervised the work done by Platt and Harvey. (ECF No. 19-3 ¶¶ 10-12; ECF No. 29-5 ¶¶ 10-12.) The Marketing Department also "utilized freelancers and consultants to assist with specific tasks and projects on an as-needed

basis." (ECF No. 19-3 ¶ 13; ECF No. 29-5 ¶ 13.)

## C. Other Employees' Maternity Leaves and/or Resignations

### 1. Kerber's Resignation

Kerber began working for Defendant as a contract employee in May 2007, transitioned to full-time work in July 2007, and left in 2012. (ECF No. 29-6 ¶ 45; ECF No. 31-1 ¶ 45.) In April 2012, Kerber took a week of vacation to care for her five-year-old son, who was off from school. (ECF No. 19-3 ¶ 156; ECF No. 29-5 ¶ 156.) Around the same time, the Hospital moved from its location in Princeton to a new facility. (ECF No. 19-3 ¶ 157; ECF No. 29-6 ¶ 157.) Franco called Kerber during that week to tell her she needed to return to work. (ECF No. 19-3 ¶ 159; ECF No. 29-6 ¶ 159.) Kerber told Franco she was looking after her son, but Franco reiterated that Kerber needed to return to work. (ECF No. 19-3 ¶¶ 160-61; ECF No. 29-5 ¶¶ 160-61.) Kerber returned to work, and Kerber's husband took time off from work to care for their son. (ECF No. 19-3 ¶ 162; ECF No. 29-5 ¶ 162.) Kerber resigned from the Hospital around November 2012. (ECF No. 19-3 ¶ 14; ECF No. 29-5 ¶ 14.) Kerber testified the incident in which Franco ordered her to return to work "was a big, big factor" in her decision to resign, because it caused "a lot of friction" between Kerber and her husband over responsibility for childcare. (Kerber Dep. (ECF No. 29-2) at 13:8-15.) Kerber was not on family leave when Franco required her to her turn to work (ECF No. 19-3 ¶ 163; ECF No. 29-5 ¶ 163), but she testified her time off was "related to lack of child care." (ECF No. 29-2 at 16:17.)

### 2. Platt's Maternity Leave

Platt began working at the Hospital in December 2010. (ECF No. 29-6 ¶ 65; ECF No. 31-1 ¶ 65.) Platt went on maternity leave from February 2013 through June 2013. (ECF No. 29-6 ¶ 66; ECF No. 31-1 ¶ 66.) While Platt was on leave, she spoke to Franco about modifying her schedule, possibly by working part time until her son was a year old. (Platt Dep. (ECF No. 29-2) at 30:17-

31:1.) Franco told Platt she did not know if that would be possible and said she would let her know. (*Id.* at 34:2-3.) Franco telephoned Platt with a human resources employee on the line, and they told Platt her position required full-time work. (*Id.* at 34:14-17.) Platt then told Franco and the human resources employee she would resign. (*Id.* at 34:17.) Platt chose to resign because she lived one hour from the Hospital and full-time work would require her to be away from her son for longer than she wanted. (*Id.* at 34:22-35:2.) Platt then accepted work as a freelance consultant for the Hospital. (*Id.* at 4: 17-22; 8:11-3.)

### 3. Harvey's Maternity Leave

Harvey began working for Defendant in 2008 and joined the Marketing Department in 2010. (ECF No. 29-6 ¶ 83; ECF No. 31-1 ¶ 83.) Harvey went on maternity leave beginning July 2013. (ECF No. 19-3 ¶ 22; ECF No. 29-5 ¶ 22.) Harvey returned to work on November 18, 2013, the same day as Plaintiff. (ECF No. 19-3 ¶ 90; ECF No. 29-5 ¶ 90.) Harvey continued to work in her coordinator position until she resigned in February 2014, to move to Canada. (ECF No. 19-3 ¶¶ 91-92; ECF No. 29-6 ¶¶ 84-85.) Harvey was later offered, and accepted, a consultant job which allowed her to work for Defendant from home. (ECF No. 19-3 ¶¶ 93-94; ECF No. 29-6 ¶¶ 93-94.)

### D. Plaintiff's Maternity Leave and Termination

In January 2013, Plaintiff informed Defendant of her pregnancy and that her due date was July 8, 2013. (ECF No. 19-3 ¶ 19; ECF No. 29-6 ¶¶ 24-26.) Shortly after Plaintiff informed Franco of her pregnancy and her intent to take all available days of leave, Franco mentioned to Plaintiff that "typically people didn't use all their FMLA and [Plaintiff] would probably be back after Labor Day," however she had no problem with Plaintiff taking her maximum amount of allotted days. (ECF No. 19-3 ¶¶ 123-27; ECF No. 29-6 ¶¶ 27-29.)

Around May 2013, Plaintiff met with a human resources representative, requesting a modified schedule upon returning to work, which would allow Plaintiff to work part-time from

home. (ECF No. 19-3 ¶¶ 132-33; ECF No. 29-6 ¶¶ 32.) Franco denied this request because the job required Plaintiff to be in her office full time and Franco believed the change would be "detrimental to the overall functioning of the Marketing Department." (ECF No. 19-3 ¶¶ 137-38; ECF No. 29-6 ¶¶ 33-37.) Around the same time, Plaintiff also worked with Franco to plan how her responsibilities would be covered during her leave. (ECF No. 19-3 ¶ 27; ECF No. 29-5 ¶ 27; ECF No. 29-6 ¶ 80.) Plaintiff trained Platt to cover many of Plaintiff's duties once Platt returned from her own maternity leave. (ECF No. 19-3 ¶ 28; ECF No. 29-6 ¶ 80.) Defendant also engaged a temporary employee and summer intern to assist while Harvey and Plaintiff were on leave. (ECF No. 19-3 ¶ 29; ECF No. 29-5 ¶ 29; ECF No. 29-6 ¶ 94.) Additionally, Defendant outsourced Plaintiff's graphic responsibilities to a vendor it was doing business with. (ECF No. 19-3 ¶ 80; ECF No. 29-5 ¶ 80.) Plaintiff began her maternity leave on June 10, 2013. (ECF No. 19-3 ¶¶ 42-44; ECF No. 29-6 ¶ 30.)

In September 2013, while Plaintiff was on leave, Defendant notified Franco to begin the 2014 budget process and to submit budget proposal for the Marketing Department by October 29, 2013. (ECF No. 19-3 ¶ 60; ECF No. 29-5 ¶ 60.) Defendant informed Franco and Norris-Smith the Hospital was looking to cut $200,000 across the Marketing Department and Community Relations Department. (ECF No. 19-3 ¶ 64; ECF No. 29-6 ¶ 150.) To cut costs, Franco and Norris-Smith cancelled a contract to develop and purchase the CPM Planning Tool (the "Planning Tool"), which was a database system used to manage customer relationships, the proffered reason being the Hospital already had a similar database in another department. (ECF No. 19-3 ¶¶ 69-74; ECF No. 29-6 ¶¶ 137-38.) Defendant claims Plaintiff was the primary employee responsible for the information and data gathering related to the cancelled Planning Tool contract. (ECF No. 19-3 ¶¶ 78-79; ECF No. 29-6 ¶ 150.)

Defendant contends the elimination of the CPM Planning tool cut $121,000 of the recommended $200,000 in budget cuts. (ECF No. 19-3 ¶ 75; ECF No. 29-6 ¶ 150.) To meet the rest of budget goal, Franco and Norris-Smith determined the best course of action was to eliminate a position in the marketing department. (ECF No. 19-3 ¶¶ 76-77; ECF No. 29-6 ¶¶ 150-54.) Franco recommended Plaintiff's position be eliminated due to her diminished responsibilities. (ECF No. 19-3 ¶¶ 79-84; ECF No. 29-6 ¶ 150.) At the time of termination, Plaintiff's salary was about $82,000. (ECF No. 19-3 ¶ 7; ECF No. 29-6 ¶ 131.)

Plaintiff returned to work on November 18, 2013. (ECF No. 19-3 ¶¶ 42-44; ECF No. 29-6 ¶ 30.) Upon her return, Plaintiff claims she notified Franco she had caught up on her projects and was ready for additional work. (ECF No. 29-6 ¶ 105.) Plaintiff further contends she received no response and was only assigned lower-level work. (ECF No. 29-6 ¶ 105.) Defendant denies that Plaintiff e-mailed Defendant regarding her work status, that Franco ignored Plaintiff, and that Plaintiff was assigned lower-level work. (ECF No. 31-1 ¶ 105.) During her deposition, Plaintiff could not identify any specific tasks that had been taken from her. (Rymas Dep. (ECF No. 19-8) at 132:9-133:24.) Plaintiff testified there was a specific document that listed certain of her job responsibilities that others would perform while she was on leave, but she did not have that document at her deposition to refresh her recollection. (*Id.* at 133:10-18.)

On December 2, 2013, two weeks after Plaintiff returned to work, Franco emailed Norris-Smith informing her that Plaintiff "ha[d] called out 3 times in two weeks and appears to be unstable." (ECF No. 29-6 ¶ 110; ECF No. 31-1 ¶ 110.) Franco testified she "chose a poor word" when she used the word "unstable" to describe Plaintiff. (ECF No. 29-6 ¶ 113; ECF No. 31-1 ¶ 113.) Franco denied that the use of the word "unstable" meant she believed Plaintiff suffered from postpartum depression. (ECF No. 29-6 ¶ 120; ECF No. 31-1 ¶ 120.) On January 6, 2014, Plaintiff

was told her position was terminated due to budgetary and financial reasons, and the decision was unrelated to her performance. (ECF No. 19-3 ¶¶ 79-84; ECF No. 29-6 ¶¶ 136-38; 147.)

**E.  The Marketing Department's Responses to Staffing Shortage**

After Kerber resigned and Plaintiff, Platt, and Harvey were on leave, the Marketing Department was left understaffed. (ECF No. 19-3 ¶ 23; ECF No. 29-6 ¶ 87.) To address this issue, Franco e-mailed Norris-Smith regarding the amount of time each employee may take off and the maternity leave options for these employees, to which Norris-Smith responded with the statement, "oy vey." (Def.'s Response to Pl.'s Statement of Facts (ECF No. 31-1) ¶ 40; ECF No. 29-6 ¶ 40.) Plaintiff argues Norris-Smith and Franco were aware of her pregnancy and the statement made by Norris-Smith is evidence of animosity towards pregnant women. (ECF No. 29-6 ¶¶ 40-43.) However, Norris-Smith testified this statement simply meant "it was going to be a challenge dealing with employees out on maternity leave in the Marketing Department." (ECF No. 31-1 ¶¶ 40-43; ECF No. 29-6 ¶¶ 40-43.) To address the staffing shortage, the Marketing Department had other staff absorb the responsibilities of those on leave, utilized temporary and per-diem employees, and outsourced more work to consultants and contractors. (ECF No. 19-3 ¶ 25; ECF No. 29-6 ¶ 86.)

Defendant claims Franco absorbed Kerber's managerial duties after Kerber resigned, while other employees in the marketing department took over the remaining duties. (ECF No. 19-3 ¶ 17; ECF No. 29-5 ¶ 17.) Plaintiff admits only that Franco testified she absorbed many of Kerber's managerial duties but argues Franco's credibility is at issue. (ECF No. 29-5 ¶ 17.) Defendant claims Kerber's position remained unfilled until it was "downgraded" from a manager position to a coordinator position in July 2013, due to budget constraints and because many of the responsibilities of this position were absorbed. (ECF No. 19-3 ¶¶ 15-16.)

In June 2013, Defendant recruited Candace Zafirellis ("Zafirellis") to fill Kerber's now

7

"downgraded" position. (ECF No. 19-3 ¶ 53; ECF No. 29-6 ¶ 58.) In August 2013, Emily Townes ("Townes") was hired to fill the full-time position left by Platt. (ECF No. 19-3 ¶ 55; ECF No. 29-6 ¶ 88.) On April 16, 2015, Christina Izzo ("Izzo") was hired to fill Harvey's role as Marketing & Public Affairs coordinator. (ECF No. 19-3 ¶ 103; ECF No. 29-6 ¶ 185.) Later, Townes informed Defendant she would be taking maternity leave from August 7 to November 10, 2015. (ECF No. 19-3 ¶ 97; ECF No. 29-6 ¶ 96.) Before returning from maternity leave, Townes made the decision to resign but asked to continue out her employment with Defendant until January 2016, to which Franco agreed. (ECF No. 19-3 ¶¶ 100-02; ECF No. 29-5 ¶¶ 100-02.) On January 25, 2016, Lisa Estrada ("Estrada") was hired to fill Townes' New Media & Corporate Communications Coordinator role. (ECF No. 19-3 ¶ 104; ECF No. 29-5 ¶ 104.) Following these changes, the Marketing Department had five full-time employees, down from six before Plaintiff began her maternity leave. (ECF No. 19-3 ¶ 106; ECF No. 29-5 ¶ 106.) Defendant claims Plaintiff's manager position has never been reinstated. (ECF No. 19-3 ¶ 106.) Plaintiff admits only that Franco testified there are only four full-time employees reporting to her. (ECF No. 29-5 ¶ 106.) Izzo and Estrada do not have children and have never taken FMLA leave, and Zafirellis has also never taken FMLA leave. (ECF No. 29-6 ¶¶ 187-88, 191-92, 194; ECF No. 31-1 ¶¶ 187-88, 191-92, 194.)

### F. Plaintiff's Post-Termination Employment History

Plaintiff applied for over sixty jobs after she was terminated. (Pl.'s Answers and Objs. to Interrogs. Served by Def. (ECF No. 19-30) at 11-14.) On March 11, 2014, slightly more than two months after she was terminated, Plaintiff received a job offer from the Advertising Specialty Institute ("ASI") for $85,000 per year plus a bonus of 5% bonus, or $4250. (Emails Related to Plaintiff's Job Search (ECF No. 19-31) at DEF_1300.) This salary offer was higher than the $82,000 per year she earned from Defendant. (ECF No. 19-3 ¶ 108; ECF No. 29-5 ¶ 108.) Plaintiff countered that she wanted an annual salary of $97,500 plus a 5% bonus (ECF No. 19-31 at

DEF_1304.) ASI did not agree to Plaintiff's proposed salary increase, so Plaintiff rejected ASI's job offer. (ECF No. 19-3 ¶ 111; ECF No. 29-5 ¶ 111.) Plaintiff testified she turned down the job offer because the commute was "considerably" longer and the job's hours were longer, which would have required her to change her son's daycare provider. (ECF No. 19-8 at 23:25-24:13.)

In July 2014, Plaintiff accepted a job with the ALS Group at a base salary of $95,000 with eligibility for a performance bonus. (ECF No. 19-3 ¶ 112; ECF No. 29-5 ¶ 112.) Around November 20, 2014, Plaintiff resigned from the position. (ECF No. 19-3 ¶ 113; ECF No. 29-5 ¶ 113.) Plaintiff testified she resigned because the owner of the company was verbally abusive. (ECF No. 19-3 ¶ 114; ECF No. 29-5 ¶ 114.) Plaintiff gave birth to her second child in June 2015, and she has not applied for any job since her resignation from the ALS Group. (ECF No. 19-3 ¶¶ 117-18; ECF No. 29-5 ¶¶ 117-18.) In May 2015, Plaintiff and her family moved to Frisco, Texas. (ECF No. 19-3 ¶ 119; ECF No. 29-5 ¶ 119.)

### G. Procedural Background

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") regarding the alleged discriminatory acts on February 4, 2014. (ECF No. 1 ¶16.) On August 27, 2015, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for her EEOC charge. (ECF No. 1 ¶ 17.) Defendant now moves for Summary Judgment. (ECF No. 19.)

### II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*,

455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.

*Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III.   DECISION

#### A.   Plaintiff's Title VII and NJLAD Claims (Counts I and III)

"Title VII prohibits employers from engaging in discrimination on the basis of race, color, religion, sex or national origin." *Atkinson v. LaFayette College*, 460 F.3d 447, 453-54 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-2). Pursuant to the Pregnancy Discrimination Act ("PDA"), an amendment to Title VII, discrimination on the basis of sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 363-64 (quoting 42 U.S.C. § 2000e(k)). "Analysis of a claim under the NJLAD follows that of a claim under Title VII." *Teubert v. SRA International, Inc.*, 192 F. Supp. 3d 569, 574 (D.N.J. 2016) (citing *Schurr v. Resorts Intern. Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999)). "All . . . discrimination claims brought under Title VII and the NJLAD . . . are controlled by the three-step burden-shifting framework set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x 831, 841-42 (3d Cir. 2016). First, a plaintiff must establish a prima facie case of sex discrimination. *Atkinson*, 460 F.3d at 454. If a plaintiff establishes a prima facie case, "the burden shifts to [the defendant] to advance

a legitimate, non-[discriminatory] reason for its action." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802-03). If the defendant is successful, the burden shifts back to the plaintiff to prove the nondiscriminatory explanation is a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

### 1. Plaintiff's Prima Facie Case for Discrimination

Defendant argues Plaintiff cannot establish a prima facie case for discrimination. (ECF No. 19-2 at 23-24.) To establish a prima facie case of discrimination based on pregnancy, a plaintiff must show (1) she was pregnant and the defendant knew that fact, (2) she was qualified for her job, (3) she suffered an adverse employment decision, and (4) there was "some nexus between her pregnancy and the adverse employment action." *C.A.R.S. Protection Plus*, 527 F.3d at 365. Defendant argues Plaintiff fails to establish the first prong because she was not pregnant at the time of her termination. (ECF No. 19-2 at 23.)

"While some effects of pregnancy linger beyond the act of giving birth, at some point the female employee is no longer 'affected by pregnancy, childbirth, or related medical conditions,' for purposes of the PDA." *Kenney v. Ultradent Prod., Inc.*, No. 05-1851, 2007 WL 2264851 at *5 (D.N.J. Aug. 6, 2007) (citing *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 753 (E.D. Pa. 2002) (quoting 42 U.S.C. § 2000e(k))). "To be a member of the protected class when no longer within temporal proximity to either pregnancy or childbirth, the plaintiff must do more than 'show she was, past tense, pregnant.'" *Id.* (quoting *Solomen*, 183 F. Supp. 2d at 754). "The plaintiff must have evidence that at the time of the adverse employment action she had a medical condition related to either the pregnancy or childbirth." *Id.* (quoting *Solomen*, 183 F. Supp. 2d at 754).

The Supreme Court has held the burden of establishing a prima facie case of discrimination is not onerous. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The Court finds Plaintiff has met that threshold. Defendant, relying on this Court's decision in *Kenney*, argues a

lack of temporal nexus between Plaintiff's childbirth and her termination precludes a finding of a prima facie case of discrimination. (ECF No. 19-2 at 23.) However, the plaintiff in *Kenney* was terminated 535 days after returning from maternity leave. 2007 WL 2264851 at *1. Here, Plaintiff was terminated fifty days after returning from maternity leave. The Court finds a reasonable jury could conclude there was sufficient temporal proximity between Plaintiff's leave and her termination, and that Plaintiff has stated a prima facie case of discrimination under the PDA.[1] Therefore, summary judgment on this issue is not appropriate.

### 2. Defendant's Nondiscriminatory Reason for Plaintiff's Termination

As Plaintiff has established a prima facie case of discrimination for the purposes of this Motion, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. This is a "relatively light burden of production" for a defendant employer to satisfy. *Barnes v. Office Depot, Inc.*, No. 08-1703, 2009 WL 4133563 at *8 (D.N.J. Nov. 24, 2009) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763. To defeat summary judgment, "[a] plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. A plaintiff's evidence must allow a factfinder to believe the defendant's nondiscriminatory justification "was either a *post hoc* fabrication or otherwise did not actually motivate the

---

[1] The Court also notes Plaintiff has presented facts concerning the departures of Kerber, Platt, and Harvey from the Hospital, all of which Plaintiff argues could allow a reasonable factfinder to conclude Franco had discriminatory views of mothers of young children. These facts also support a finding that Plaintiff has established a prima facie case of discrimination.

employment action (that is, the preferred reason is a pretext)." *Id.*

Defendant claims Plaintiff was terminated because her position was eliminated for budgetary reasons and because several of her duties were eliminated or outsourced to contractors. (Certification of Carol-Norris Smith (ECF No. 19-4) ¶ 4; Norris-Smith Dep. (ECF No. 19-12) at 86:9-20; Franco Dep. (ECF No. 19-11) at 11:17-12-7.) Defendant cites a variety of contemporaneous documents and testimony that illustrate the nondiscriminatory reason for Plaintiff's termination. On November 1, 2013, Franco sent an email as part of the budget planning process in which she sought to correct a salary project that did not include Plaintiff. (ECF No. 19-24 at PHS-00000195.) Franco wrote "Lisa Rymas and Rachel Harvey . . . are currently on maternity/baby bonding leave. They are expected to return Nov. 18, 2013. Their positions have not been eliminated . . . ." (*Id.*) On November 4, 2013, Franco and other Hospital personnel discussed eliminating the Planning Tool. (*Id.* at PHS-00000791, PHS-00001149.) Plaintiff testified she was involved with researching the Planning Tool and with contracting with the vendor that provided the tool. (ECF No. 19-8 at 82:1-84:25.) Norris-Smith testified the Planning Tool "was going to be a huge part of [Plaintiff]'s responsibilities. And without the planning tool, her responsibilities would be greatly diminished." (ECF No. 19-12 at 86:4-8.) Franco and Norris-Smith both testified the generation of ROI Reports, which was one of Plaintiff's responsibilities, was switched to an automated process. (ECF No. 19-11 at 12:3-7; ECF No. 19-12 at 86:9-20.) On November 14, 2013, Franco received an email that stated the Marketing Department needed to be cut by $200,000. (ECF No. 19-24 at PHS-00000778.) On November 26, 2013, the vendor agreed to terminate the Planning Tool contract with no penalty to Defendant, and the project was eliminated. (ECF No. 19-25 at PHS-00001065-66; ECF No. 29-5 ¶¶ 73-74.) The elimination of the Planning Tool cut $121,000 of the $200,000 budget reduction that was sought. (ECF No. 19-3

¶ 75; ECF No. 29-5 ¶ 75.) Franco and Norris-Smith decided to make the remaining budget cuts by eliminating Plaintiff's position. (ECF No. 19-3 ¶¶ 84-85; ECF No. 29-5 ¶¶ 84-85.) Defendant notes another employee, Sonia Patel, was also terminated due to the same budget cuts that led Defendant to eliminate Plaintiff's position. (ECF No. 19-4 ¶ 5.) Sonia Patel was not pregnant at the time of her termination and never took maternity leave from the Hospital. (*Id.* ¶ 6.)

The Court finds Defendant has produced evidence from which a jury could conclude it had had a legitimate, nondiscriminatory reason for Plaintiff's termination. The burden therefore shifts to Plaintiff to defeat summary judgment by demonstrating evidence from which a jury could conclude Defendant's stated reasons are pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).

### 3. Plaintiff's Argument That Defendant's Reasons for Her Termination are Pretextual

Plaintiff maintains Defendant's proffered nondiscriminatory reasons for her termination are pretextual. She offers several arguments in support of this position, which the Court will consider in turn.

#### a. There was no directive to terminate any Marketing Department personnel

Plaintiff argues Defendant issued no directive to Norris-Smith or Franco to terminate any employees. (ECF No. 29 at 23.) Though Defendant concedes this is true (ECF No. 31 at 4), it contends the point is immaterial. A plaintiff seeking to defeat an employer's motion for summary judgment "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765 (citation omitted). Defendant has produced contemporaneous documents, cited above, that demonstrate Franco was directed to reduce the Marketing Department budget by $200,000. The fact that Franco and Norris-

Smith had discretion as to how to make those cuts, and the fact they elected to make the cuts in part by terminating Plaintiff is not evidence the termination was pretextual.

### b.   Defendant hired additional personnel shortly before terminating Plaintiff

Plaintiff argues the Marketing Department expanded shortly before her termination, which undermines Defendant's assertion that budget cuts motivated her termination. (ECF No. 29 at 23.) Defendant hired two employees in July and August 2013, respectively, which was five months before Plaintiff's January 2014 termination. (ECF No. 29-6 ¶¶ 88, 94; ECF No. 31-1 ¶¶ 88, 94.) The two employees' combined salaries totaled $26,000 more than Plaintiff's salary. (ECF No. 29-6 ¶¶ 89, 95; ECF No. 31-1 ¶¶ 89, 95.) Plaintiff also notes Defendant retained Platt as a consultant to cover during Plaintiff's maternity leave and then extended Platt's time as a consultant through the end of the year. (ECF No. 29-6 ¶¶ 99, 102; ECF No. 31-1 ¶¶ 99, 102.) Plaintiff claims these personnel decisions demonstrate Defendant's argument that budget constraints led to Plaintiff's termination is pretextual.

The Court is not persuaded. The undisputed facts demonstrate Franco did not receive information about the $200,000 budget cuts until November 2013. (ECF No. 19-24 at PHS-00000778.) Defendant hired the two additional employees in July 2013 and August 2013. (ECF No. 29-6 ¶¶ 88, 94; ECF No. 31-1 ¶¶ 88, 94.) On November 1, 2013, just thirteen days before Franco learned of the planned budget cuts, she sent an email in which she stated Plaintiff would be an employee in the coming year. (ECF No. 19-24 at PHS-00000195.) The undisputed facts demonstrate: (1) Defendant hired the two employees months before Franco learned of the planned budget cuts; and (2) Franco intended to retain Plaintiff just two weeks before she learned of the planned budget cuts. A reasonable jury could not conclude Defendant's personnel decisions—made months before Plaintiff's termination—demonstrate its basis for Plaintiff's termination was pretextual.

### c. The lack of documents to support Defendant's termination of Plaintiff

Plaintiff contends Defendant has not produced any document "explaining the basis for Defendant's decision to terminate Plaintiff's employment." (ECF No. 29 at 24.) Plaintiff argues this lack of documentation is evidence of pretext. (*Id.* at 25 (citing *Eno v. Lumberman's Merchandising Corp.*, No. 10-7514, 2012 WL 1344394 at *6 (D.N.J. Apr. 18, 2012)).) The Court rejects Plaintiff's argument for two reasons. First, while Defendant did not produce a single document in which it laid out the rationale for Plaintiff's termination, numerous contemporaneous documents demonstrate Defendant's basis for the termination. *See supra* Section III.A.2. Second, Plaintiff has not cited authority to support the notion a lack of a single supporting document is evidence a termination was pretextual. In *Eno*, the case upon which Plaintiff relies, the court found defendant's nondiscriminatory reason—plaintiff's disruptive and contentious behavior—was pretextual, because there were no documents supporting that characterization of plaintiff. Here, Defendant has produced numerous documents in support of its claim budget constraints led to Plaintiff's termination.

### d. The Planning Tool was not a significant part of Plaintiff's duties

Plaintiff refutes Defendant's claim that it terminated Plaintiff, in part, because her duties were diminished significantly when the Planning Tool was eliminated. (ECF No. 29 at 25.) She argues the Planning Tool cannot have been a significant part of her job as Defendant claims, because Defendant cancelled the contract before the Planning Tool was implemented. (*Id.* at 25-26.) Plaintiff argues the lack of implementation of the Planning Tool contradicts Defendant's asserted reason for her termination, and such a contradiction is evidence of pretext. (*Id.* at 27 (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006).)

Plaintiff's argument regarding the Planning Tool is similar to her argument regarding the lack of a single document ordering her termination. While both arguments are correct in fact, they

do not raise issues of material fact. *See Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A party opposing summary judgment must "do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Daubert*, 861 F.3d at 587). Though the Planning Tool was never implemented, Plaintiff testified she was involved with researching the Planning Tool and with contracting with the vendor that provided the tool. (ECF No. 19-8 at 82:1-84:25.) Further, Defendant did not cite the elimination of the Planning Tool as the sole reduction in Plaintiff's duties. Franco and Norris-Smith both testified the generation of ROI Reports, which was one of Plaintiff's responsibilities, was switched to an automated process. (ECF No. 19-11 at 12:3-7; ECF No. 19-12 at 86:9-20.) Plaintiff's graphic design duties were outsourced to a contractor. (ECF No. 19-8 at 80:15-81:22.) Plaintiff refutes this evidence by noting Defendant—technically—never implemented the Planning Tool. That alone cannot create an issue of material fact. *See Fuentes*, 23 F.3d at 765-66 (noting that a party opposing summary judgment must point to "implausibilities, inconsistencieis, or contradictions in the employer's proffered legitimate reasons" for termination, not merely assert the reason is untrue). Plaintiff does not deny the Planning Tool, if implemented, would have been part of her duties. The Court finds Plaintiff has not proffered evidence from which a reasonable jury could conclude Defendant's elimination of the Planning Tool was pretext for her termination.

### e. Defendant's elimination of Plaintiff's position

Plaintiff argues Defendant cannot plausibly claim it eliminated her position in light of the facts that it decided to terminate her only five days after she returned from leave and then reassigned some duties to other employees. (ECF No. 29 at 26-27.) She claims the reasons Defendant proffered for eliminating her position are "baffling and contradictory." (*Id.* at 27.) Plaintiff notes the Planning Tool was eliminated before her return from leave, which means

Defendant knew of the purported reason for her termination weeks before it claims it decided to terminate her. (*Id.*) Plaintiff also notes Defendant admits some of Plaintiff's responsibilities were reassigned to other employees after her termination. (ECF No. 29-6 ¶ 142; ECF No. 31-1 ¶ 142.) Plaintiff maintains this fact could allow a reasonable jury to conclude Defendant's reasons for terminating Plaintiff are pretextual. (ECF No. 29 at 27.)

The Court finds Plaintiff has not successfully rebutted Defendant's stated nondiscriminatory reasons for her termination by raising questions about the elimination of her position. Defendant has produced several contemporaneous documents that show the budget process, which overlapped with Plaintiff's return from leave, dictated Defendant's personnel decisions in the Marketing Department. *See supra* III.A.2. The Marketing Department consisted of five full-time employees reporting to Franco before Plaintiff went on leave, and it was reduced to four full-time employees reporting to Franco after Plaintiff's termination. (ECF No. 19-3 ¶¶ 18, 49, 88; ECF No. 29-5 ¶¶ 18, 49, 88.) Plaintiff disputes Franco's testimony regarding the Marketing Department's staffing by stating Franco's "credibility is in issue in this case." (ECF No. 29-5 ¶ 88.) The Third Circuit has held a party cannot oppose summary judgment merely by arguing his or her adversary is not credible. *Fuentes*, 32 F.3d at 766 ("These criticisms amount to little more than the schoolground retort, 'Not so,' an approach which . . . does not create a material issue of fact.").

As to Plaintiff's argument regarding the reassignment of her duties, Defendant has shown and the Court has found several of Plaintiff's duties were eliminated. *See supra* III.A.3.d. Defendant does not claim it eliminated every duty associated with Plaintiff's position. The Court finds no inconsistency in Defendant's account of its elimination of Plaintiff's position.

### f. Defendant's retention of a less experienced employee who did not have children

Plaintiff argues the fact Defendant terminated her and retained a less experienced employee who did not have children could allow a reasonable jury to find her termination was discriminatory. (ECF No. 29 at 27-28.) Defendant hired Zafirellis in June 2013, roughly seven months before Plaintiff was terminated. (ECF No. 19-3 ¶ 53; ECF No. 29-6 ¶ 58.) Plaintiff, citing an email in which Franco said she was unhappy with Zafirellis, argues Zafirellis had performance issues, while the parties agree Defendant never cited problems with Plaintiff's performance. Plaintiff argues a reasonable jury could find Defendant's reasons for terminating her were pretextual, because it retained a much less experienced employee who had no children while terminating her.

Plaintiff's argument is flawed. Defendant did not terminate Plaintiff due to performance issues, so even if Zafirellis did perform less capably than Plaintiff that fact would not be relevant. Defendant terminated Plaintiff due to budget constraints. Defendant's budget projected Zafirellis would earn $52,998 in 2014, while Plaintiff was projected to earn $82,971. (ECF No. 19-9 at 2.) Defendant's claim it terminated Plaintiff in an effort to cut spending cannot be reasonably viewed as pretextual based on its decision to retain an employee who earned less than two-thirds of Plaintiff's salary.

### g. Defendant's failure to determine if Franco discriminated against Plaintiff

Plaintiff's final argument that Defendant's reasons for her termination are pretextual is that Defendant's human resources manager, Joanne Banner ("Banner"), failed to investigate whether Franco's decision to terminate Plaintiff was related to Plaintiff's pregnancy or maternity leave. (ECF No. 29 at 28-29 (citing ECF No. 29-6 ¶ 177; ECF No. 31-1 ¶ 177).) Plaintiff argues Defendant's failure to determine whether Franco discriminated against Plaintiff creates an issue of fact as to whether discrimination occurred.

The Court is not persuaded. In view of the evidence—cited throughout this Opinion—that Defendant's desire to cut spending led to Plaintiff's termination, the fact that Defendant did not investigate the possibility of discrimination does not create an issue of material fact. Once a defendant employer proffers a nondiscriminatory reason for its decision, the plaintiff retains "the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763. Plaintiff does not cite any law to support the notion that a failure to investigate discrimination is itself evidence of discrimination.

Plaintiff has not cited "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. The Court finds Defendant is entitled to summary judgment as a matter of law as to Plaintiff's Title VII and NJLAD claims.

### B. Plaintiff's FMLA and NJFLA Claim (Counts II and IV)

"Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA." *Wolpert v. Abbott Labs.*, 817 F. Supp. 2d 424, 437 (D.N.J. 2011) (citing *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 596 (D.N.J. 2006)). "To establish a prima facie claim for retaliation under the FMLA and NJFLA, the plaintiff must demonstrate that: (1) [he] took a FMLA/NJFLA leave; (2) [he] suffered from an adverse employment decision; and (3) the adverse decision was casually related to [his] FMLA/NJFLA leave." *Valenti v. Maher Terminals LLC*, No. 14-7897, 2015 WL 3965645, at *3 (D.N.J. June 30, 2015) (quoting *Truesdell v. Source One Personnel Inc.*, No. 07-1926, 2009 WL 1652269, at *4 (D.N.J. June 9, 2009) (citations omitted)). Once the plaintiff establishes a prima facie claim for retaliation under the FMLA and NJFLA, the claim must be analyzed under the burden-shifting

framework articulated in *McDonnell Douglas*, 411 U.S. at 792. *See Truesdell*, 2009 WL 1652269, at *4.

Defendant contests only the third of the three elements necessary for Plaintiff to establish a prima facie claim for retaliation under the FMLA and NJFLA. (ECF No. 19-2 at 35-36.) The Third Circuit has found a plaintiff can raise an inference of retaliation in two ways: (1) temporal proximity between the employee's leave and the adverse decision; or (2) evidence of ongoing antagonism. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) (citing *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271 280-281 (3d Cir. 2000)).

Plaintiff argues there is sufficient temporal proximity to support an inference of retaliation. (ECF No. 29 at 31.) She notes Franco made the decision to terminate her within less than two weeks after Plaintiff returned from leave. The Court agrees two weeks is sufficient temporal proximity to permit a reasonable jury to find Plaintiff has raised an inference of retaliation. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *see also Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759-60 (3d Cir. 2004) (finding a two-month period was not sufficient temporal proximity).

The Court finds Plaintiff has established a prima facie claim for retaliation under the FMLA and NJFLA. The Court must analyze Plaintiff's claim under the burden-shifting framework articulated in *McDonnell Douglas*. *Truesdell*, 2009 WL 1652269, at *4 (citing 411 U.S. at 792). The Court has applied *McDonnell Douglas* and found Defendant proffered a nondiscriminatory basis for Plaintiff's termination, which Plaintiff could not demonstrate was a pretext for anything,

be it gender discrimination or retaliation. *See supra* III.A. Therefore, the Court finds Defendant is entitled to summary judgment as to Plaintiff's FMLA and NJFLA claims for retaliation. Defendant's Motion for Summary Judgment as to those claims is **GRANTED**.

### C.  Plaintiff's Failure to Mitigate Damages

Defendant argues Plaintiff failed to mitigate damages, as she decided to leave a higher paying job, which she held from August 2014 through November 20, 2014. Because the Court has granted Defendant's Motion for Summary Judgment, the issue of damages is moot and the Court will not reach the question of Plaintiff's failure to mitigate.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate Order will follow.


Date: October 27, 2017

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**